SANDERS COMPANY PLUMBING AND HEATING, INC., Plaintiff,

v.

B.B. ANDERSEN CONSTRUCTION COMPANY, INC., et al. Defendants.

Civ. A. No. 86–4183–S.

United States District Court, D. Kansas.

May 11, 1987.

Kevin E. Glynn, Niewald, Waldeck, Norris & Brown, Kansas City, Mo., Stephen J. Dennis, Niewald, Waldeck, Norris &

Brown, Overland Park, Kan., R.W. Miller, Stephen R. Miller, Miller and Bash, P.C., Kansas City, Mo., Frederick K. Starrett, Overland Park, Kan., for plaintiff.

Richard T. Sowell, James E. Drinnon, Jr., Baker, Worthington, Crossley Stansberry & Woolf, Knoxville, Tenn., David A. Vorbeck, Margolin & Kirwan, Kansas City, Mo., Timothy P. McCarthy, John L. Peterson, Williamson & Cubbison, Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant B.B. Andersen Construction Company's motion to dismiss for lack of subject matter jurisdiction. The court held a hearing on this matter on May 1, 1987, at which the opposing parties conducted examination of witnesses and introduced exhibits concerning the issue of the location of defendant's principal place of business. This controversy has arisen at this late stage of the lawsuit because defense counsel only recently discovered that defendant may have had its principal place of business in Missouri at the time of the filing of this lawsuit, in which case diversity would be lacking based on plaintiff's status as a Missouri corporation.

Only those facts relevant to the issue of subject matter jurisdiction need be mentioned here. Prior to April 11, 1986, defendant B.B. Andersen Construction Co. (Andersen of Kansas), a Kansas corporation, operated its principal place of business in Kansas as it had done since its formation in the early 1970's. During the years 1985–86, defendant was experiencing financial difficulties. Its bonding company, defendant United States Fidelity & Guaranty (USF & G), had had a suit pending against Andersen of Kansas in which USF & G claimed that defendant was insolvent. In November, 1985, Andersen of Kansas and USF & G entered into an agreement in which the former agreed not to issue any checks and the latter agreed to handle Andersen of Kansas' accounts, to oversee the completion of many of the company's construction projects, and to issue checks on

behalf of Andersen of Kansas. Andersen of Kansas presented evidence of approximately three projects that USF & G did not control.

On April 11, 1986, Andersen of Kansas effectively closed its operation in Topeka, Kansas. This event had been planned for several months. Although a few ministerial tasks remained to fully effectuate its cessation of business in Topeka, by April 30, 1986, the only vestiges of the company that remained in Topeka were certain closed files that were placed at a rented storage facility. While the evidence indicated that Andersen of Kansas' operations in Topeka ceased in April, 1986, it is controverted as to whether its operations existed anywhere after that date.

Andersen of Kansas would have the court believe that as of the date of filing of this lawsuit, June 6, 1986, the company had its principal place of business in Kansas city, Missouri, based on the following facts. Andersen of Kansas entered into a sort of lease agreement with B.B. Andersen Construction Company, a Missouri corporation [hereinafter "Andersen of Missouri"] that operated out of an office in Kansas City, Missouri. Under the terms of the agreement, Andersen of Missouri was to handle all of Andersen of Kansas' management functions, such as paychecks, payment of bills, etc., and USF & G, which by the earlier-referenced agreement had assumed control of Andersen of Kansas' projects, was to reimburse Andersen of Missouri for all expenses incurred on behalf of Andersen of Kansas. On April 11, 1986, Andersen of Kansas moved its "operations" to Andersen of Missouri's offices in Kansas City, Missouri. These operations were subsequently conducted by B.B. Andersen, John Shortall, and Larry Bruner (all of whom were employees of Andersen of Kansas when the company was in Kansas), and consisted of completing defendant's construction jobs. Although the men were purportedly employees of Andersen of Kansas, they were paid by Andersen of Missouri and their W–2 tax forms confirm this.

Andersen of Kansas notes that prior to June 6, 1986, some of plaintiff's employees telephoned the company at the Kansas City, Missouri office to discuss the Knoxville, Tennessee project, which is the subject of the present lawsuit. From this fact, Andersen of Kansas contends that plaintiff must have known that the Topeka office no longer existed and that the new principal place of business was in Missouri. Andersen of Kansas also contends that even though it subsequently conducted no business under its own corporate name (such as issuance of expense or payroll checks), these functions were contracted out to other parties, and that Andersen of Kansas was present and doing business in Missouri through the three men mentioned above. Therefore, the company argues that its *one* principal place of business on June 6, 1986, was Kansas City, Missouri and diversity is lacking.

Plaintiff paints a different picture of the facts. Plaintiff argues that defendant had no place of business in Missouri, although plaintiff could not really point to any facts evidencing the existence of a place of business in Kansas after April, 1986.* Plaintiff points out that every corporation operating in Missouri (or any other state, for that matter) has certain filing obligations with federal, state, county, and municipal authorities, such as employee withholding tax forms payroll tax forms, forms for earnings taxes, property taxes, quarterly wage reports, and on and on. Andersen of Kansas filed no forms whatsoever with any governmental entity evidencing a move to Missouri. The company apparently had a certificate to do business in Missouri at one time, but at the time of the filing of this lawsuit, the official status of that certificate was uncertain and several months later, on August 11, 1986, the certificate was canceled.

Plaintiff also relies on the absence of any employee working in Missouri on Andersen of Kansas' payroll and the lack of certain functional indications of the company's existence (*i.e.,* Andersen of Kansas had no phone number in Missouri and its name did not appear on the door of its alleged office). Plaintiff argues that Andersen of Kansas had no place of business in Missouri, that the corporation ceased to function in April, 1986, and that it is a citizen of Kansas, the only state in which it claims defendant had good standing as a corporation authorized to do business.

The court finds that at least until April 11, 1986, Andersen of Kansas had its principal place of business in Topeka, Kansas. After that date, the company did not have its "principal place of business" in Kansas as that term is used in contemporary cases dealing with corporate citizenship. Relying on the evidence adduced at the hearing, only three alternatives remain. They are: (1) the company had its principal place of business in Missouri; (2) it became an inactive corporation and had no principal place of business at all and is solely a citizen of the state of its incorporation; or (3) its status as an active corporation is uncertain but in any event, the evidence failed to support the argument that a new principal place of business other than Kansas had been established. The court finds that the facts adequately establish both of the latter alternatives.

## I. NO PRINCIPAL PLACE OF BUSINESS

The first hoop to jump through in finding that defendant had no principal place of business is confirming that such a conclusion is possible under the federal statutes governing jurisdiction. Through 28 U.S.C. § 1332(a)(1), Congress expanded this court's jurisdiction to civil actions in which the matter in controversy exceeds the sum

---

* Plaintiff places great weight on evidence that the corporation continued to list Topeka, Kansas as its principal place of business even after April, 1986. For instance, plaintiff notes that employment reports filed with the State of Kansas listed six employees working in the Kansas office as late as June, 1986. Although the court agrees that Andersen of Kansas continued to act as if Topeka was its main office, these external manifestations do not rebut the established fact that Andersen of Kansas no longer conducted business operations, beyond certain legal matters, subsequent to April, 1986.

of $10,000 and is between citizens of different states. Under subsection (c), Congress determined that a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the state where it has its principal place of business." It is apparent that the statute requires that every corporation must have one and only one principal place of business. *See* 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3624, at 611 (1984) (citing cases); 1 J. Moore, J. Lucas, H. Fink, D. Weckstein, & J. Wicker, Moore's Federal Practice ¶ 0.77[3.–1], at 717.60 (1986) [hereinafter Moore's Federal Practice] ("There is ... a sizeable group of corporations [doing] substantial business in two, three, or several states, and even on a national scale. According to the Senate Report, 'Even such a corporation ... would be regarded as a citizen of that one of the States in which was located its principal place of business.' ") (citations omitted). It appears that Congress recognized but did not accept the possibility that a corporation would have many offices in many states at which it transacts a substantial amount of business, and that the corporation should be treated as a citizen of each of those states. *See id.* at 611–13 & n. 23 (quoting Friedenthal, *New Limitations on Federal Jurisdiction*, 11 Stan.L.Rev. 213, 224–25 (1959)). Congress does not appear to have considered the antithesis—that an inactive corporation may have no principal place of business at all. Nor have commentators such as Moore or Wright & Miller squarely addressed the issue.

The court could locate only one federal court of appeals case touching on this question, and its opinion referred to the possibility of having no principal place of business as "perverse logic," but the court found that the corporation involved in the lawsuit was not an active corporation. Therefore the court avoided a decision on the merits of the argument. *See Co-Efficient Energy Systems v. CSL Industries*, 812 F.2d 556, 558 & n. 2 (9th Cir.1987). The only other opinions on the issue have come from federal district courts, all of which support today's decision. This court believes, however, that its findings are also consistent with other federal court cases discussing the general concept of a "principal" place of business.

The oldest and perhaps most analogous case was *Gavin v. Read Corp.*, 356 F.Supp. 483 (E.D.Pa.1973). The court described the situation as follows:

> The traditional tests for determining a corporation's principal place of business, such as the "operating assets", and the "nerve center" or "center of gravity" tests, ... do not offer much assistance in determining the principal place of business of a corporation such as Read, which has sold all of its assets and has been in the process of winding up its business affairs but is still in existence at the time of the commencement of the action....

*Id.* at 486 (citations omitted). The subject corporation argued that it had its principal place of business in Pennsylvania and was still registered to do business in that state, even though it was no longer engaged in any business activity at the time of the complaint. The court astutely noted that the term "principal place of business" does not mean "principal office" or even "registered office." Also important to the court were the facts that the corporation had no office of its own in Pennsylvania, paid no rent on any office in Pennsylvania, and owned, rented or possessed no office equipment or furniture and had no employees on the relevant filing date. The court also noted that the corporation did not make any sales or purchases of any products and did not pay any wages or salaries. The corporation argued and the court accepted the fact that an agent of the corporation was present in Pennsylvania, but the court stated that this fact alone was an insufficient basis for establishing a principal place of business. The court held:

> While it is clear that under Title 28 U.S.C. § 1332(c), a corporation may be deemed to be a citizen of two states ..., it is clear that a corporation may be a citizen of only one state, the state of its incorporation, if it is determined that its principal place of business happened to

be in that state.... Furthermore, the Court is of the opinion that the situation where a corporation is first formed and granted a charter, but has not commenced business, is not too much different, for purposes of 28 U.S.C. § 1332(c), from the facts and circumstances of the instant case where a corporation has ceased all of its business activities ... and is in the process of winding up. In both instances the corporation is deemed to be a citizen only of the state of incorporation.

356 F.Supp. at 486–87. By necessity, the court's holding relied on no precedent, as this was a case of first impression. But its conclusion is valid and applicable to the present case, although perhaps for additional or different legal grounds than were used in *Gavin*.

Because the statutory language governing the citizenship of a corporation appears to strictly require that a corporation *have* a principal place of business, it is perhaps understandable why no courts have followed the precise holding in *Gavin*. It seems to this court, however, that *Gavin* represents a more honest and less result-oriented approach than the cases in the following section, which hold that the principal place of business is the state in which the corporation last conducted business operations. If, under all the established tests, a corporation simply did not have a principal place of business at the time a suit was filed, and in fact had no business operations at all, despite the existence of an "office" of sort, the proper holding should be that it is a citizen only of its state of incorporation, despite the unaffording language of the statute.

## II. CITIZEN OF STATE OF LAST BUSINESS ACTIVITY

The remaining three cases in which the principal place of business of an apparently inactive corporation was discussed all revolve around a common theme: "To determine the principal place of business of an inactive corporation, a federal court sitting in diversity should look to the state of the corporation's last business activity." *Interpetrol Bermuda, Ltd. v. Rosenwasser*, No. 86 Civ. 5632 (JFK), slip op. (S.D.N.Y. Mar. 2, 1987) [available on WESTLAW DCT database]. The chief case among the three is *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 608 F.Supp. 1261 (S.D.N.Y.1985). In this case, the Passalacqua company was incorporated in Ohio and was qualified to do business in Florida. The plaintiffs argued that the corporation was inactive at the time the suit was commenced and that its sole citizenship was Ohio, the state of incorporation. The court declined to find that the corporation had *no* principal place of business, but rather determined that the principal place of business of a corporation that was inactive at the time a suit is filed is the state of the corporation's last business activity. *Id.* at 1263. Because Florida was the last state in which the corporation conducted any business other than the mere storage of corporate records or the conduct of a lawsuit, it was a citizen of Florida for diversity purposes. The *Interpetrol Bermuda* decision, also from the South District of New York, relied on *Passalacqua* in reaching the same legal conclusion. Finally, in *Dadzie v. Leslie*, 550 F.Supp. 77 (E.D.Pa. 1982), the court presumed, without expressly so stating, that the inactive corporation involved in that suit would have a principal place of business wherever its former principal place of business existed. *Compare id.* at 78 ("Thus, since before the filing of this lawsuit, Kal-Sahara has had no principal place of business. When it did operate one, plaintiffs assert it was in the District of Columbia."), *with id.* at 79 ("If [defendant] is found to be a citizen of any state at [the time the suit was filed], the court will then determine Kal-Sahara's former principal place of business.").

## III. CONCLUSION

In light of the cases outlined above, this court could either hold that Andersen of Kansas had no principal place of business at the time the suit was filed, if that conclusion can be reconciled with 28 U.S.C. § 1332(c), or else find that its principal place of business is Kansas, the state of its last business activity, because the evidence

fails to show the establishment of any other principal place of business. The court finds that under either theory, the facts and the law establish Kansas as Andersen of Kansas' sole state of citizenship and that diversity exists in this lawsuit.

 If one were to go back in time to the filing of this lawsuit on June 6, 1986, and attempt to find B.B. Andersen Construction Co. of Kansas, one would find that it existed only in the records of the State of Kansas, where it was incorporated, and the State of Missouri, where a precarious certificate to conduct business was on file. The mere fact that a corporation is doing business or is licensed to do business in a state does not make it a citizen of that state for purposes of diversity jurisdiction. Moore's Federal Practice, § 0.77[1–3], at 717.10 (citations omitted). There were no other external manifestations of the corporation. It had no telephone, no employees on its payroll, no name on its door, and no ability to conduct its own affairs. It functioned solely through the efforts of Andersen of Missouri and USF & G. It had no existence in the taxing and regulatory authorities of Missouri, and there were no documents on file with the federal government evidencing a presence in Missouri. The corporation lived on, if at all, solely to wind down—to close its construction projects and to conduct the legal matters then pending.

The court does not find it significant that plaintiff's representatives telephoned Andersen of Kansas at its Missouri "office." These calls immediately preceded the filing of this lawsuit. There was no indication at the hearing that the plaintiff was doing anything other than tracking down Andersen of Kansas wherever it could find it, and Andersen of Kansas produced no evidence that plaintiff *in fact* understood its place of business to have been relocated to Missouri. The court simply cannot find anything to grasp on to that might confirm Andersen of Kansas as having *any office,* *let alone a principal place of business,* in Kansas City, Missouri. None of the traditional tests for establishing a corporation's principal place of business persuade this court to find differently. The company's alleged "activities" in Missouri would not constitute that office as the principal place of business, since the court is unable to ascertain the conduct of *any* business in Missouri. The court is well aware that the burden of establishing jurisdiction is on the plaintiff, but the evidence more than adequately supports the existence of diversity. Therefore, whether the reasoning is that it had no place of business at all, or whether the court holds that its principal place of business is Kansas because that was its former and only prior place of operations, the court finds that Andersen of Kansas was a citizen of Kansas and no other state at the time of the filing of this lawsuit. Because plaintiff is not a Kansas citizen, this court has subject matter jurisdiction.

Plaintiff has requested attorney's fees and other available sanctions against Andersen of Kansas for the bringing of this motion to dismiss. Although the court agrees that the motion had precious little merit and that the investigation of the facts behind the motion should have been confirmed this, the court will keep the issue of sanctions under advisement and will decline to make a ruling at this time.

IT IS BY THE COURT THEREFORE ORDERED that defendant B.B. Andersen Construction Co.'s motion to dismiss be denied. IT IS FURTHER ORDERED that plaintiff's motion for sanctions be taken under advisement.